[Civ. No. 12299. Second Appellate District, Division Two.—December 29, 1939.]

## CHARLES D. CLINE, Respondent, v. HERMAN BERGER et al., Appellants.

Henry Haves for Appellants.

Loyd Wright, Charles E. Millikan and Arthur Wright, Jr., for Respondent.

McCOMB, J.—From an order denying defendants' motion to dissolve a writ of attachment upon the ground that the note upon which plaintiff's cause of action was based was secured by a chattel mortgage and a lien upon personal property, defendants appeal.

The essential facts are:

Defendants executed a promissory note in favor of plaintiff reading as follows:

## "PROMISSORY NOTE
### (Non-Negotiable)

"$8750.00            Los Angeles, California,
"September 13, 1938

"In installments as herein stated, for value received, we promise to pay to Chas. D. Cline, at Bank of America, 7th and Figueroa Branch, Los Angeles, California, the sum of Eight Thousand Seven Hundred Fifty ($8750.00) Dollars, with interest from September 1, 1938, on unpaid principal at the rate of seven (7%) per cent per annum, payable monthly with principal payments; principal payable in the following installments:

"$100.00 on the 30th day of September, 1938, and continuing monthly thereafter on the last day of each and every month for the first 12 month period of said note;

"$250.00 per month beginning with the 30th day of September, 1939, and continuing monthly thereafter on the last day of each and every month for the next 6 month period of said note;

"$500.00 per month beginning with the last day of March, 1940, and continuing monthly thereafter on the last day of each and every month for the next 12 month period of said note;

"And any unpaid balance shall be paid on the 1st day of March, 1941.

"Should interest not be so paid it shall thereafter bear like interest as the principal. Should default be made in payment of any installment of principal or interest when due the whole sum of principal and interest shall become immediately due at the option of the holder of this note. Principal and interest payable in lawful money of the United States. If action be instituted on this note, we promise to pay such sum as the Court may fix as attorney's fees. This note is executed pursuant to agreement of the parties hereto of even date herewith, to which agreement reference is hereby made.

"(Signed)    HERMAN BERGER
HARRY SELIG"

At the same time plaintiff and defendants entered into the following agreement:

"AMENDED AGREEMENT.

"THIS AGREEMENT, made and entered into this 13th day of September, 1938, by and between CHARLES D. CLINE, First Party, referred to as 'SELLER', and HERMAN BERGER and HARRY SELIG, Second Parties, referred to as 'BUYERS',

"WITNESSETH:

"The parties hereto, in contracting, do so with reference to the following facts:

"On July 2nd, 1936, the parties hereto entered into a written contract for the purchase and sale of the Seller's business, known as the French Slipper Shoppe, to which contract reference is hereby made, and same is hereinafter referred to as 'Original Agreement'. Buyers are now indebted to Bank of America National Trust and Savings Association, Los Angeles, California, in the sum of Ten Thousand Five Hundred ($10,500.00) Dollars, represented by their promissory note, payment of which note Seller has guaranteed. Demand for payment thereof has now been made by said Bank and buyers are unable to pay and liquidate said note. The parties hereto have entered into certain agreements regarding the loaning of money to liquidate said note and amendments to the original agreement which are as follows:

"1. Seller agrees, upon the execution hereof, to loan to the buyers the sum of $8,750.00, which buyers agree to forthwith apply on the buyers' note for $10,500.00, hereinbefore referred to, and at the same time buyers agree to pay to said Bank the balance owing on said promissory note in order that same may be fully paid.

"2. Buyers agree, upon the execution hereof, to execute to seller their certain nonnegotiable promissory note for $8,750.00, bearing interest from date at the rate of 7% per annum, payable as follows: $100.00 per month plus interest for each and every month of the first twelve months' period of said note; $250.00 per month plus interest for each and every month of the next six months' period of said note; $500.00 per month plus interest for each and every month of the last twelve months' period of said note, any balance unpaid to be paid March 1, 1941.

"3. At the present time buyers are indebted to seller for the unpaid purchase price of said business in the sum of $22,183.98, plus interest from the 1st day of September, 1938, at 7% per annum. Notwithstanding the monthly payments required to be made by said original agreement, the buyers shall pay to seller the following monthly installments beginning with the 30th day of September, 1938, and up to and including the installment due January 31, 1939;

"The sum of $500.00 per month, less the sums which the buyers are required to pay on the promissory note in the particular month as referred to in paragraph 2, *supra.*

"The net amount of said $500.00 payment shall be then applied first to the interest due, and the remainder to principal on the unpaid balance of said original agreement.

"4. For the period between August 1, 1938, and February 1, 1939, the firm of Ernst & Ernst shall prepare their financial statement of said business as soon after said 1st day of February, 1939, as can be done, and it shall be determined from said statement whether or not said business has been conducted by buyers during said six months' period at a profit or loss.

"(a) For the purposes of determining whether or not a profit or loss has been made by buyers for said six months' period ending February 1, 1939, all merchandise on hand and inventoried on the 1st day of February, 1939, shall be subjected to a depreciation and obsolesence charge of 10% thereof, to be included in the financial statement and to be deducted from the inventory. (Said inventory must be completed by buyers within ten days after the close of the six months' period.)

"(b) Should the financial statement show that the business for the six months' period ending February 1, 1939, was carried on at an operating profit, then this amended agreement shall automatically continue for an extended period of six months from February 1, 1939, and the payments to be made to seller shall be at the same rate provided for the first six months' period as above specified plus an amount equal to the interest on said promissory note for the particular months. The same procedure outlined for determining a profit or loss on February 1, 1939, shall be used by Ernst & Ernst in making the financial statement

of said business on August 1, 1939, except that in determining the amount of depreciation, 5% of the merchandise on hand and inventoried shall be used.

"(c) Should an operating profit be made by the buyers for the six months' period ending August 1, 1939, then this agreement shall continue for another period of six months, and thereafter for successive intervals of six months' periods as long as in the prior period an operating profit has been made by the buyers, using the 5% depreciation figure on inventory; provided, however, that the payments to seller shall be the following: From August 1, 1939, to January 31, 1940, $750.00 a month, plus an amount equal to the interest on said promissory note for the particular month, less amounts required to be paid by buyers on the promissory note in said months; from February 1, 1940 to July 31, 1940, and from August 1, 1940 to January 31, 1941, $1,000.00 a month plus an amount equal to the interest on said promissory note for the particular month, less amounts required to be paid by buyers on the promissory note in said months.

"(d) The payments provided herein are, and each of them is, without the grace period mentioned in paragraph XIV of the original agreement.

"(e) After said promissory note is fully paid, the parties shall then be restored to the terms, covenants and conditions of said original agreement, without any further reference to this amended agreement.

"5. Should there be an operating loss by the buyers for the period of August 1, 1938, to January 31, 1939, then the buyers shall have the privilege of paying out of their personal funds, and not out of the business, to the escrow holder, hereinafter referred to, for the account of the seller, within five days after the rendition of said financial statement of Ernst & Ernst, the amount of said operating loss, which shall be applied on the 1st installments due hereunder. If such payment is made, then this amended agreement shall continue for another period of six months, as hereinbefore provided in paragraph 4. The same privilege is accorded the buyers for any subsequent six months' period in which an operating loss is sustained to have this agreement continue by paying said loss to the seller through said escrow.

"6. Should the buyers sustain an operating loss and fail to pay same for the period of August 1, 1938, to January 31, 1939, or at the end of an extended six months' period thereafter, then the seller, without resorting to any litigation, shall have the right to repossess himself of said business, and all of the buyers' right, title and interest therein and to the same, and the seller shall thereupon become the sole and exclusive owner of said business, free from any claims of the buyers thereto. For the purposes of accomplishing this, the buyers, concurrently herewith, will execute and deliver into an escrow, mutually agreed upon between the parties, a bill of sale of said business, assignments of the leases on the two locations, and assignments of the insurance policies covering said business, with instructions to deliver same to the seller upon their failure to comply with the provisions of paragraph 5.

"In the event that the seller exercises the right of repossession of said business, as herein provided, and the seller should require certain documents from the buyers in order to perfect his title to said business, the buyers agree, upon demand, to execute any and all other documents necessary or proper to convey their right, title and interest in and to said business.

"The seller concurrently agrees to deposit in said escrow a release whereby the buyers are released from all liability under the original agreement, this amended agreement, and said promissory note, and any other note signed by buyers and guaranteed by seller, which release shall be delivered to the buyers upon the delivery to the seller of the bill of sale and other papers covering said business. The seller in such event agrees to deliver to the buyers the notes marked 'Cancelled'.

"In the event the seller repossesses himself of said business, the seller does hereby agree to hold the buyers free and harmless of and from all liability incurred by them to merchandise creditors of said business and to the lessors on said leases, and to banks for moneys borrowed by the buyers in connection with the operation of said business; provided, that the seller has theretofore approved or guaranteed the purchase of said merchandise, and has approved or guaranteed the obligations to said bank.

"7. During the six months' period ending January 31, 1939, or any extended six months' period while this amended agreement is in force, buyers agree that they will not place any orders or re-orders for merchandise without the seller's consent first had and obtained, excepting herefrom special orders; and provided that the seller agrees that he will not unreasonably withhold his consent to such orders and re-orders.

"8. The buyers may, at or prior to the expiration of any six months' period herein specified, surrender and deliver up to the seller the aforesaid business ·by giving notice in writing to said escrow holder to deliver said bill of sale and other title papers to the seller forthwith. The escrow holder shall be authorized to comply with the said notice from the buyers by delivering the bill of sale and other title papers to the seller and by delivering to the buyers the release. This privilege to surrender the business accorded the buyers shall be a joint one, and can only be exercised by the buyers jointly.

"In the event that one of the buyers withdraws from the operation of said business during the existence of this amended agreement, then the seller shall have the immediate right of repossession, and written notice to the escrow holder by the seller that one of said buyers has withdrawn from the business shall be sufficient authority for said escrow holder to immediately deliver to the seller the bill of sale and other papers covering said business, and to deliver to the buyers the releases hereinbefore referred to.

"9. Each of the parties hereto shall pay his own attorney's fees, and buyers shall not pay their attorney from said business.

"10. Except as hereinabove modified, all of the terms and conditions of the original agreement shall remain and be in full force and effect, including the seller's right to withdraw cash surplus from said business.

"11. Sarah Berger, wife of Herman Berger, and Mabel Selig, wife of Harry Selig, join in the execution hereof for the purpose of consenting to the provisions hereof and binding whatever interests they have in buyers' business under the Community Property Laws of the State of California, and Eunice D. Cline joins in the execution hereof for the purpose of consenting to the provisions hereof.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands the day and year hereinabove first set forth.

> "CHAS. D. CLINE
> > First Party.
> HERMAN BERGER
> HARRY SELIG
> > Second Parties.
> SARAH BERGER
> MABEL SELIG
> EUNICE CLINE."

Thereafter on March 3, 1939, plaintiff brought an action against defendants alleging that defendants were in default in the payments due on the aforesaid promissory note, and obtained a writ of attachment which was levied upon property of the defendants in Los Angeles County. April 5, 1939, defendants' motion to dissolve the attachment, on the ground that the note was secured by a mortgage and lien upon property of the defendants, in virtue of the agreement hereinabove set forth, was denied.

This is the sole question to be determined:

*Did the agreement above set forth constitute a mortgage or lien upon personal property of defendants within the purview of section 537, subdivision 1, of the Code of Civil Procedure, so as to prevent the issuance of a writ of attachment?*

This question must be answered in the negative. A reading of the agreement fails to disclose any provision providing that upon defendants' failure to pay any installment or to pay the sum due on the promissory note plaintiff would have any right under the terms of the contract to repossess himself of the property referred to in the agreement. Paragraph 6 of the agreement contains the only condition upon which the plaintiff would have the right to repossess himself of the properties described in the agreement, that condition being that, should defendants operate the business at a loss, then plaintiff might take possession of the properties. The agreement in no way provides a security or lien for the enforcement of the promissory note set forth above.

For the foregoing reasons the order appealed from is affirmed.

Moore, P. J., and Wood, J., concurred.